## Richmond

IRVING RICHARD RINKOV V. COMMONWEALTH OF VIRGINIA.

October 9, 1972.

Record Nos. 8002 and 8003.

Present, All the Justices.

*A. J. Canada, Jr.* (*Ansell, Butler and Canada*, on brief), for plaintiff in error in Record Nos. 8002 and 8003.

*Robert L. Simpson, Jr., Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error to Record Nos. 8002 and 8003.

HARRISON, J., delivered the opinion of the court.

Irving Richard Rinkov was indicted in the court below on November 20, 1970 for unlawfully and feloniously, with intent to defraud, drawing and delivering to the Colonial Stores, Inc. two checks on Seaboard Citizens National Bank, one dated July 12, 1967 for $225, and the other dated July 14, 1967 for $220, knowing at the time that he did not have in that bank sufficient funds for the payment of such checks. Defendant was tried on May 5, 1971, a jury having been waived, and was found guilty on both indictments. He appeals the final orders of conviction entered September 7, 1971, imposing concurrent sentences in the penitentiary of 3 years on

each offense. Execution of the sentences was suspended and the defendant was placed on probation during good behavior for a period of 3 years.

Defendant was a customer of Colonial Stores, Inc., at their store located on Military Highway in the City of Virginia Beach, and on numerous prior occasions the store had cashed checks for him. On July 12, 1967 defendant purchased certain articles from the store for which he gave his check for $225. After deducting the amount of the articles purchased defendant received the balance in cash. Similarly, on July 14, 1967 defendant gave the store a check for $220 in payment of merchandise purchased and received the balance in cash.

The checks bore the name "King Builders Company, 2407 Pacific Avenue, Virginia Beach, Virginia 23451" on the face thereof. They were signed on behalf of King Builders Company by Irving Rinkov payable to the order of Richard Rinkov and each was endorsed "Richard Rinkov". Irving Rinkov and Richard Rinkov are one and the same. On the back of each check was noted the defendant's address, "701 Nottingham Drive", made by the employee of the store cashing the check.

Both checks were presented to the bank and returned with slips attached to each indicating that payment was refused because the maker had "insufficient funds" to cover. An unsuccessful effort was made to contact defendant at King Builders Company. On July 27, 1967 Colonial Stores sent defendant a letter by certified mail, with return receipt requested, addressed to him at 701 Nottingham Drive, Virginia Beach, notifying him that payment of the checks had been refused by the bank due to insufficient funds in his account to pay the same. This letter was returned by the postal authorities with the notation that it had been "unclaimed" at the address indicated, and attached thereto was the unexecuted and unsigned return receipt which had accompanied it.

After his indictment in 1970 defendant, through his counsel, made restitution to the store for the amounts of the checks.

Defendant testified that at the time he gave the checks he thought he had a sufficient amount in the bank to cover their payment. He introduced a statement from the bank, dated June 30, 1967, which reflected the activities in his account for the month of June, 1967. It shows that during that month he drew 25 separate checks on his King Builders Company account. One was in the amount of $231.70

and was cashed at Colonial Stores. The account also shows that $208.03 was brought forward in the account on June 1st, and that during the month he made 4 deposits aggregating $2,200. Twice during the month he was overdrawn. On June 30th his account showed a balance of $462.57 to his credit.

Defendant said that about the time he drew these checks (July 12-14) he was experiencing domestic difficulties and that he left the state suddenly and went to Florida. Defendant did not introduce his July bank statement, saying that he never received it. Neither the Commonwealth nor the defendant introduced the records of the bank to show the status of the account, deposits and withdrawals during the month of July, or to show what occurred in the account during that month or any time thereafter.

Defendant testified that he did not receive the notice from Colonial Stores, and that after he left the state none of his mail was forwarded to him by his wife. We find little else in the record regarding the actions or business transactions of defendant subsequent to his giving the two worthless checks and leaving Virginia, other than his testimony that he returned in December, 1967 and conveyed his residence to his wife.

Rinkov contends that the evidence of the Commonwealth does not establish that he had the requisite intent to defraud when he uttered the checks. Virginia Code § 6.1-115 provides in part that "[a]ny person who, with intent to defraud, shall . . . draw . . . any check . . . for the payment of money, upon any bank . . . , knowing, at the time of such . . . drawing . . . that the maker or drawer has not sufficient funds in, or credit with, such bank . . . for the payment of such check . . . , although no express representation is made in reference thereto, shall be guilty of larceny".

Code § 6.1-117 provides that when a check is returned by the drawee bank because of lack of funds or credit, such return shall be prima facie evidence of intent to defraud, or of the knowledge that there were not sufficient funds or credit, unless the drawer, or someone for him, pays the holder, within five days after receiving written notice of dishonor by certified or registered mail, the amount due. This is a rule of evidence upon which the Commonwealth may rely in facilitating proof of the fraudulent intent of the drawer. *Cook v. Commonwealth*, 178 Va. 251, 258, 16 S. E. 2d 635, 638 (1941). The dispositive question here is whether, under the facts in this case, the presumption arises that Rinkov uttered the check with

fraudulent intent by virtue of the letter which was sent to defendant at his last known address.

In order for such a presumption to arise the notice to be given defendant must have been mailed by certified or registered mail and *evidenced by return receipt.* Manifestly the purpose of requiring the notice to be sent by registered or certified mail, and evidenced by a receipt, is to have not only evidence of the required mailing to the defendant, but also evidence that the notice was either received in person by the defendant (as would be shown by his signature on the return receipt), or that the letter did in fact reach the last known address of the defendant and was there accepted by someone at that address. Otherwise there would be no reason for the statute to require the notice be sent by registered or certified mail and evidenced by a return receipt.

Code § 6.1-117 further provides that where a check shows on its face a printed or written address of the maker then the required notice, when sent by certified or registered mail to such address, with or without return receipt requested, shall be deemed sufficient and equivalent to notice having been received by the maker or drawer, whether such notice shall be returned undelivered or not. The Commonwealth is not relying upon this provision of the statute, notwithstanding the checks showed on their face a printed address of the maker. The reason is obvious. The defendant's correct last known address, admitted by him, was 701 Nottingham Drive, Virginia Beach, Virginia, where he had lived approximately five years, and this was the address given by him and noted on the checks at the time they were cashed. Thus the printed address on the face of the checks was not the correct address, and this was known to the personnel of Colonial Stores.

In any event, the evidence is conclusive that the notice was not sent to the defendant at the King Builders Company office, but to his home address. It is conceded that it was not received there, and that the return receipt was not signed by defendant or anyone at that address.

Under these circumstances the Commonwealth cannot rely upon a presumption that the defendant uttered the checks with fraudulent intent, and must prove affirmatively the existence of a fraudulent intent in the mind of the drawer at the time the checks were written and negotiated. Such intent is the gravamen of the offense, and an indispensable element of the crime. Absent the statutory presump-

tion it must be proved by the Commonwealth. *Rosser* v. *Commonwealth*, 192 Va. 813, 66 S. E. 2d 851 (1951).

We are persuaded after a careful reading of the record that the Commonwealth's Attorney did rely on this presumption in his prosecution of the defendant, and that the trial judge did rely on the presumption in finding the defendant guilty.

At the conclusion of the Commonwealth's case, counsel for defendant moved to strike the Commonwealth's evidence upon the ground that there was no evidence that defendant had any knowledge that his bank account was overdrawn at the time the checks were uttered. During the exchange between counsel the trial judge observed:

> "[T]he reason for the five day notice is so that he might be put on notice that a bad check has been delivered and unless he pays this thing within five days, it's presumed that he knew—he is guilty of uttering a bad check. That's what the five days is for as I understand it. . . . I overrule your motion temporarily anyway. . . ."

At the conclusion of all the evidence the defendant renewed his motion to strike. It was overruled, the court saying:

> "I think the Commonwealth has a prima facie case."

And again, following argument, the trial court said:

> "It is close. But after I read that case on prima facie, it shows on him the burden."

And further, when counsel for defendant argued that his client did not know that his account was overdrawn and that the Commonwealth could not prove that he had received some communication, or had been notified in some way, the court responded:

> "Well, I think that the burden is on him to explain to the court."

The Commonwealth argues that the defendant's knowledge of insufficient funds and his fraudulent intent were established by virtue of the presumption under § 6.1-117, written notice having been sent

the defendant, by registered mail, with return receipt attached, to his last known address. We disagree that the statutory presumption should be accorded in this case.

In the alternative, the Commonwealth further argues that there was sufficient evidence submitted to prove the defendant's knowledge of insufficient funds, and his fraudulent intent, without relying upon the statutory presumption. Since this case may be retried we think it improper for us to comment on the sufficiency of the evidence to establish such knowledge and fraudulent intent. We think it obvious that in finding the defendant guilty the trial court did rely upon the presumption and that this constitutes reversible error. We are unable to say from the record that, absent the statutory presumption, there would have been a finding by the court of guilt in these prosecutions.

Accordingly, each case is reversed and remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*