COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Powell and Senior Judge Coleman
Argued at Richmond, Virginia


TYRONE ANTWAN HERNDON

                                         MEMORANDUM OPINION[*] BY

v.       Record No. 1393-08-3              JUDGE CLEO E. POWELL
                                            MAY 26, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF MARTINSVILLE
Joseph W. Milam, Jr., Judge

S. Jane Chittom, Appellate Defender (Office of the Appellate
Defender, on briefs), for appellant.

Rosemary V. Bourne, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Tyrone Antwan Herndon ("Herndon") appeals his conviction for possession of cocaine, in

violation of Code § 18.2-250.  He contends that the certificate of analysis, which was introduced

at trial by the Commonwealth, was inadmissible because inconsistencies in the description of the

evidence submitted for testing and the description of the evidence that was included in the

certificate of analysis demonstrate a break in the chain of custody.

BACKGROUND

Herndon was arrested in the early morning hours of August 12, 2006 by Officers Robert

Jones and Rob Coleman of the Martinsville Police Department.  During the course of the arrest,

Officer Coleman discovered a dry plastic baggy containing several off-white, rock-like objects

underneath Herndon, who had fled from a motor vehicle and was lying down in a wooded area at

the time.  Suspecting that the baggy contained drugs, Officer Coleman secured the bag and kept

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

it in his possession until he arrived at the police station. He then sealed the baggy in an evidence bag and placed his signature on the evidence tape used to seal the evidence bag. He sent the evidence bag via certified mail to the state laboratory to be analyzed. After the laboratory analyzed the evidence, Officer Coleman received a certificate of analysis which stated that the item submitted contained cocaine.

At trial, when the Commonwealth sought to enter the certificate of analysis into evidence, Herndon objected, claiming that the evidence examined by the laboratory was not the same as the evidence Officer Coleman secured at the scene. Herndon pointed to the fact that, in the "Request for Laboratory Examination," Officer Coleman described the item submitted as: "Evidence bag containing baggie with six (6) off-white rocks." However, the certificate of analysis described the item submitted as: "One (1) small ziplock plastic bag which contained off-white substance and four (4) knotted plastic bag corners each of which contained off-white substance."

In response, the Commonwealth had Officer Coleman examine the items submitted to the state laboratory for analysis. After confirming that the envelope and the evidence bag were the ones that he had submitted to the laboratory, the following exchange took place:

> [COMMONWEALTH:] Did you package each of those items the way they appear today?
>
> [OFFICER COLEMAN:] No ma'am, I did not.
>
> [COMMONWEALTH:] Could you explain how they were when you sent them to the lab?
>
> [OFFICER COLEMAN:] Yes ma'am. They were in one baggie, appeared to have plastic wrapped around them and tied. They were not packaged as you see them today. They were in larger forms. There was also the knotted bags that are still available.
>
> [COMMONWEALTH:] So[me] of the items are in knotted bags and some of it is loose in the smaller bags that the lab provided, is that correct?

[OFFICER COLEMAN:]  Yes ma'am, that's correct.

During the subsequent cross-examination, the following exchange took place:

[DEFENCE COUNSEL:]  Lieutenant Coleman, your testimony is that what you sent off, from what you remember, was one bag with off-white rocks in it, is that correct?

[OFFICER COLEMAN:]  That's correct.

[DEFENSE COUNSEL:]  And this is the first time you're opening this particular package?

[OFFICER COLEMAN:]  Yes, that's correct.

\* \* \* \* \* \* \*

[DEFENSE COUNSEL:]  But you don't recognize that group the way it was packaged back today?

[OFFICER COLEMAN:]  That's correct.

[DEFENSE COUNSEL:]  It's not what you sent?

[OFFICER COLEMAN:]  That's correct.

[COMMONWEALTH:]  Your Honor, I object to that question. Officer Coleman has testified that he sent those items to the lab, that they are sealed with his initials.  There's a presumption of regularity in this case.  We have submitted to the court all the items with the seals intact, and to characterize that those are not the items you sent to the lab, the Commonwealth would object to that because we have proven that they are.

[THE COURT:]  Well, I think counsel was referring to the packaging, correct, Counselor?

[DEFENSE COUNSEL:]  That's correct, Judge.

The trial court found that the chain of evidence was sufficient and overruled Herndon's objection, thus allowing the Commonwealth to enter the certificate of analysis into evidence. Herndon was subsequently found guilty of possession of cocaine.  Herndon appeals.

ANALYSIS

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion."  Blain v.

- 3 -

Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). The burden of proving that the trial court erred is on the party objecting to the admission of the evidence. Dunn v. Commonwealth, 20 Va. App. 217, 220, 456 S.E.2d 135, 136 (1995).

"The purpose of the chain of custody rule is to establish that the evidence obtained by the police was the same evidence tested." Robertson v. Commonwealth, 12 Va. App. 854, 857, 406 S.E.2d 417, 419 (1991). "'Where the substance analyzed has passed through several hands the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis.'" Id. (quoting Horsley v. Commonwealth, 2 Va. App. 335, 338, 343 S.E.2d 389, 390 (1986)). "The Commonwealth is not required to exclude every conceivable possibility of substitution, alteration, or tampering." Pope v. Commonwealth, 234 Va. 114, 129, 360 S.E.2d 352, 357 (1987). Rather, the Commonwealth must "show with reasonable certainty that there has been no alteration or substitution of [the evidence]." Robinson v. Commonwealth, 212 Va. 136, 138, 183 S.E.2d 179, 180 (1971). "[T]he requirement of reasonable certainty is not met when some vital link in the chain of possession is not accounted for, because then it is as likely as not that the evidence analyzed was not the evidence originally received." Id. (quoting People v. Riser, 305 P.2d 1, 10 (Cal. 1957)).

Furthermore, "where authorized personnel handle a tested material, a 'presumption of regularity' attaches at the moment the material is received by an authorized agent of any of the [entities listed in Code § 19.2-187.01] until it is released after analysis." Dunn, 20 Va. App. at 222, 456 S.E.2d at 137. Thus, once the lab received the evidence, the trial court could presume, absent evidence to the contrary, that it properly discharged its official duties. Robertson, 12 Va. App. at 856-57, 406 S.E.2d at 418.

Herndon argues that the striking differences between Officer Coleman's description of the evidence he submitted for testing and the description of the evidence that was included in the

- 4 -

certificate of analysis demonstrate a break in the chain of custody. Herndon bases this argument upon the notion that, "[s]ince pieces of cocaine do not contain unique identifiers, the only way their identity can be established with reasonable certainty is by number of pieces and their packaging at the time they are recovered."

We have previously held that there are "several factors to be considered by the trial judge in assessing the underlying authenticity of the certificate and its contents." Crews v. Commonwealth, 18 Va. App. 115, 120, 442 S.E.2d 407, 409 (1994). These factors include the date of the offense, the identity of the suspect, the identity of the investigating officer, the case numbers assigned, and the certified mail numbers. Id. In the present case, all of the identifying features on the request for laboratory examination form and the certificate of analysis, with the exception of the description, match. Thus, as in Crews, the request for laboratory examination form and the certificate of analysis "coincide to connect the data analyzed and subject of the certificate" to the evidence retrieved by Officer Coleman. Id.

Furthermore, Herndon's argument regarding a discrepancy between the number of pieces submitted for testing and the number of pieces tested was disposed of by the trial court. It is well established that, "[o]n review, we will not disturb the factual findings of the trial court unless plainly wrong or unsupported by the evidence." Robinson v. Commonwealth, 273 Va. 26, 39, 639 S.E.2d 217, 224-25 (2007). In ruling that the certificate of analysis was admissible, the judge specifically stated:

> It is argued that there is a variance between what the officer described as having been seized and what is now returned from the lab. However, it is the court's view that the certificate of analysis here may not be as descriptive in terms of numbering and providing a gross number of the rocks involved as Officer Coleman's testimony, but *it's not a variance because the officer never said that it was one rock per baggy corner*.

(Emphasis added).

- 5 -

Thus, the judge, having had the opportunity to observe the witnesses and the physical evidence, determined that there was, in fact, no discrepancy in the number of pieces of cocaine.

Herndon further relies on Officer Coleman's testimony that the package containing the evidence that he sent to the laboratory was different from the package that he received back from the laboratory as further proof that the evidence submitted was not the same as the evidence that was tested. We acknowledge that, at one point Officer Coleman agrees that he doesn't recognize "the way it was packaged" and that "it's not what [he] sent [to the lab]." However, when taken in the proper context, it is clear that Officer Coleman was not saying that the evidence was different; rather, he was saying that the packaging that the laboratory used to send the evidence back to him was different from the packaging he used to send the evidence to the laboratory. For example, Officer Coleman testified that the laboratory used yellow tape to re-seal the evidence bag after conducting the requested tests. Such changes in the packaging are to be expected, as it is axiomatic that the laboratory will have to open the sealed evidence bag and then re-seal it in the course of conducting the requested tests.

Appellant argues that while defense counsel agreed that he was referring to the packaging, his questions show that the "packaging" to which he was referring was the knotted plastic baggie corners. Therefore, appellant argues "the reasonable explanation is that the laboratory analyzed and sent back cocaine rocks recovered from some other suspect, not Herndon, and that the rocks were already packaged in plastic baggie corners when recovered from that other suspect." Appellant's argument focuses on the fact that Officer Coleman did not mention "baggy corners" in his "Request for Laboratory Examination." While we disagree with this interpretation, we find that the officer addressed any issue this argument might raise. While Officer Coleman did not mention, "baggy corners" on his "Request for Laboratory Examination," clearly there were knotted bags in the evidence he sent. When questioned by the

Commonwealth's Attorney as to how the evidence he sent was packaged, the officer replied, "There was also the knotted bags that are still available."

Clearly, the evidence sent contained "knotted bags" and the evidence returned contained "knotted bags." In light of all the other evidence, the fact that the descriptions do not match exactly is insufficient to prove that the evidence seized was different from the evidence tested.

## CONCLUSION

"Where there is mere speculation that contamination or tampering could have occurred, it is not an abuse of discretion to admit the evidence and let what doubt there may be go to the weight of the evidence." Reedy v. Commonwealth, 9 Va. App. 386, 391, 388 S.E.2d 650, 652 (1990). In the present case, Herndon has offered nothing more than speculation that the evidence analyzed by the lab was not the same evidence seized at the time of his arrest. We therefore affirm Herndon's conviction for possession of cocaine.

Affirmed.